UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
THOMAS P. DiNAPOLI, COMPTROLLER OF :
THE STATE OF NEW YORK, AS :
ADMINISTRATIVE HEAD OF THE NEW :
YORK STATE AND LOCAL RETIREMENT :
SYSTEM AND TRUSTEE OF THE NEW YORK :
STATE COMMON RETIREMENT FUND, :
              Plaintiff, :
               :
   -against- : Civil Action No. 1:26-cv-11075
               :
BJ'S WHOLESALE CLUB HOLDINGS, :
INC., :
              Defendant. :
---------------------------------------------------------------x

## COMPLAINT

Thomas P. DiNapoli, Comptroller of the State of New York, as Administrator of the New York State and Local Retirement System and Trustee of the New York State Common Retirement Fund ("Fund" or "Plaintiff"), by its undersigned counsel, alleges as follows:

## INTRODUCTION

1. The Fund brings this action for a declaratory judgment and injunctive relief to assert its right as a shareholder of BJ's Wholesale Club Holdings, Inc. ("BJ's" or the "Company") to compel BJ's to include the Fund's shareholder proposal in BJ's proxy materials which BJ's wrongfully intends to exclude when it issues its 2026 proxy materials. Section 14(a) of the Securities and Exchange Act (the "Exchange Act") and Rule 14a-8 promulgated thereunder require BJ's to include the Fund's proposal in its proxy materials.

2. The proposal, which seeks a report on risks of deforestation on BJ's supply chain, is legal under Delaware law, and is a proper subject for action by BJ's shareholders. As such, BJ's decision to exclude the proposal from its 2026 proxy statement is in violation of Section 14 of the Exchange Act and the Rules of the SEC.

3.      The Fund's shareholder proposal is strictly limited to requesting a report on BJ's assessment of the risks of deforestation associated with its private-label brands.  BJ's is a Delaware corporation, and under Delaware law and BJ's own existing bylaws, shareholders, such as the Fund, are empowered to submit shareholder proposals for consideration by BJ's shareholders at BJ's annual meeting.

4.      The Fund submitted its proposal consistent with its long-standing focus on climate-related corporate risks.  The Fund believes that company's management of its risk relating to climate issues is critical to the Fund's investments.  By refusing to include the Fund's shareholder proposal with its proxy materials, BJ's is not only obstructing a legitimate effort by a shareholder to improve BJ's corporate governance but is also attempting to prevent the Fund from exercising its fundamental rights as a shareholder.

## JURISDICTION AND VENUE

5.      The claim asserted herein arises under and pursuant to Section 14(a) of the Securities and Exchange Act, 15 U.S.C. §78n, and Rule 14a-8, 17 C.F.R. § 240.14a-8, promulgated thereunder.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b-d).  BJ's resides and has its headquarters within this District, conducts substantial business within this District, and the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.

## THE PARTIES

8. The New York State Common Retirement Fund holds and invests the assets of the New York State and Local Retirement System, which serves more than 1.2 million New York public employees, retirees and beneficiaries. The Fund maintains its headquarters at 110 State Street, Albany, NY.

9. BJ's is a Delaware corporation and maintains its corporate headquarters at 350 Campus Drive, Marlborough, MA.

## BACKGROUND

### A. The Regulatory Scheme

10. Section 14(a) of the Securities and Exchange Act of 1934 (the "1934 Act") renders unlawful the solicitation of proxies in violation of the SEC's rules and regulations, which are codified at 17 C.F.R. § 240.14a-1 *et seq.*

11. The scope of the SEC's regulatory authority is limited, however, and does not extend to areas that traditionally have been reserved as matters of state law. The federal securities laws are primarily concerned with issues of disclosure and are not intended to usurp the rights of the states to regulate internal governance of corporations incorporated under their respective laws.

12. In large, publicly-held corporations today, most shareholders rarely attend the company's annual meeting. Therefore, to ensure a quorum—the minimum number of participants required to legally conduct business— a company utilizes proxies to make sure that it has the vote of enough shareholders to accomplish the necessary business which must be done at the annual meeting. Without reliance on proxy voting, companies like BJ's would be unable to elect directors or to take other necessary actions.

13. Shareholders execute proxies to authorize another person to vote his or her shares at the annual meeting. Proxies are thus an indispensable part of corporate governance. The company sends out proxy materials, including a proxy solicitation and a voting card that contains the company's proposals for shareholder vote, well in advance of the company's annual meeting.

14. SEC Rule 14a-8, 17 C.F.R. § 240.14a-8, addresses the procedures for submitting shareholder proposals, prescribes when a company must include a shareholder's proposal in the company's proxy statement, and lists the circumstances under which a shareholder proposal may be excluded by the company.

15. Rule 14a-8(b)(1) requires, among other things, that to be eligible to submit a proposal, the shareholder "must have continuously held at least $25,000 in market value of the company's securities entitled to vote on the proposal for at least one year." 17 C.F.R. § 240.14a-8(b)(1)(i)(C). Procedurally, the rule requires that shareholder proposals be limited to 500 words (17 C.F.R. § 240.14a-8(d)), and must be submitted to the Company no later than 120 days before the publication of the company's proxy statement. 17 C.F.R. § 240.14a-8(e)(2).

16. If a shareholder satisfies the proxy rule's eligibility and procedural requirements, the company *must* include the proposal in its proxy materials *unless* if the proposal falls within thirteen specifically enumerated categories in Rule 14a-8.[1] In other words, a company *cannot* exclude a shareholder's proposal from the company's proxy materials unless the company meets

---

[1] Specifically, in question-and-answer format, Rule 14a-8 lists thirteen grounds upon which a company may rely to exclude a shareholder proposal from the company's proxy. BJ's seeks to exclude the Fund's proposal under the seventh exemption on the grounds that the proposal "deals with a matter relating to the company's ordinary business operations." 17.C.F.R. § 240.14a-8(i)(7).

4

its burden of demonstrating that the proposal falls within one of the thirteen enumerated exclusions to the Rule. If the company fails to meet its burden, assuming the shareholder is eligible and has met the procedural requirements for submitting the proposal, the company *must* include the proposal with the company's proxy materials.

### B.     The Fund's Shareholder Proposal

17.     On December 23, 2025, the Fund notified BJ's that the Fund was submitting a shareholder proposal that the Fund intended to present at BJ's 2026 annual meeting. The Fund's proposal, entitled "Report on Supply Chain Deforestation Impacts," requested that the Company produce a report assessing the risks associated with deforestation relating to BJ's private-label brands.

18.     The Fund's shareholder proposal included the following resolution:

RESOLVED: Shareholders request that BJ's Wholesale Club Holdings, Inc. ("BJ's" or "the Company") conduct an assessment of risks of deforestation associated with its private-label brands within one year and provide a report summarizing the results. The report may, at management's discretion, be updated annually and include an assessment of forest degradation within the supply chain; feasible, time-bound target setting; third-party monitoring and verification; and assessment of the financial and operational implications of the related risks.

19.     The Fund submitted the following supporting statement in its proposal:

WHEREAS: More than half of global GDP is moderately or highly dependent on nature. Ongoing deforestation threatens to disrupt the reliability of the natural ecosystems and the global economy, creating potential material financial risks for companies and investors. The World Bank estimates that the degradation of natural system, could reduce global GDP by $2.7 trillion annually by 2030. BJ's use of commodities (e.g., beef, palm oil, soy and paper/pulp) associated with deforestation exposes its supply chain to the major drivers of global deforestation. Despite these risks, BJ's does not publicly disclose its policies or practices for assessing and managing deforestation risk. Moreover, the Company's removal of the sustainability report from its website further limits transparency into how these risks are addressed.

The Company's 10-K identifies "consistent product quality, competitive pricing, and availability of these products is essential to developing and maintaining member loyalty to its private label brands," all of which depend on a stable and

resilient supply chain. Deforestation threatens this resiliency, yet there is no clear indication that BJ's evaluates or mitigates related risks specifically for its private-label offerings, for which the Company has direct control over product sourcing. This concern becomes increasingly consequential as BJ's "expect[s] to increase the sales penetration of [its] private-label items," which currently represent 25% of annual sales. Failure to assess these risks means growing private-label sales penetration could magnify deforestation risks, including supply chain disruptions, reputational damage, and material financial implications, all of which are key risks identified in the Company's 10-K.

Peer retailers such as Costco and Kroger have disclosed deforestation risk assessment results across their supply chains, including private-label products. Furthermore, competing consumer goods companies that produce products similar to BJ's private label brands such as Unilever, Kraft Heinz, and General Mills, have taken greater action on deforestation by implementing time-bound deforestation-free commitments across key commodities and enforcing rigorous traceability and supplier standards.

BJ's lack of comparable assessment and commitment to eliminate deforestation lags peers and limits the Company's ability to manage supply chain risks, mitigate reputational and operational vulnerabilities, and safeguard long-term performance. A robust assessment of deforestation risks, including within BJ's private-label offerings, Berkley Jensen and Wellsley Farms, would help ensure BJ's private-label growth is supported by responsible sourcing, sound governance, and effective risk management.

We urge shareholders to vote FOR this proposal.

20. In submitting its proposal, the Fund set forth the following information to confirm its eligibility and compliance with the procedural requirements of Rule 14a-8:

  a. The Fund is the beneficial owner of shares of BJ's common stock with a market value of at least $25,000;

  b. The Fund had held those shares for over one year as of December 23, 2025, and intended to hold those shares through the date of the BJ's 2026 annual meeting; and

  c. The Fund's agent intends to offer the proposal at BJ's 2026 annual meeting for shareholder consideration.

### C.     BJ's Rejection of The Fund's Proposal

21.    On February 12, 2026, BJ's wrote to the SEC Division of Corporation Finance (the "Division"), copying the Fund, notifying the Division that BJ's intended to omit the Fund's shareholder proposal from its proxy materials for the 2026 annual meeting. Rule 14a-8 requires companies to provide this notice to the Division and the shareholder proponent if a company believes that it may exclude the proposal under one of the thirteen exclusions in Rule 14a-8(i). BJ's indicated that it intends to exclude the Fund's proposal under the "ordinary business exclusion" of Rule 14a-8(i)(7).

22.    Ordinarily, the Fund would have an opportunity to respond to BJ's letter, and explain why the Fund believes that BJ's is not allowed to exclude its proposal from the Company's proxy materials. The Division would then evaluate both submissions and issue an informal, non-binding determination either concurring or declining to concur with the company's position concerning the proposal's excludability. This process is specifically contemplated in the SEC's rules. See 17 C.F.R. § 240.14a-8(j)-(k).

23.    The Division is taking a different approach this proxy season. On November 17, 2025, the SEC issued a statement informing companies and shareholders that the Division would not respond substantively to most of the no-action requests submitted for the 2026 proxy season.[2] Instead, if a company submits an "unqualified representation that [it] has a reasonable basis to exclude the proposal" under Rule 14a-8, the Division would not object to the company's decision to exclude the proposal.

---

[2] SEC Division of Corporation Finance Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season, Nov. 17, 2025, available at https://www.sec.gov/newsroom/speeches-statements/statement-regarding-division-corporation-finances-role-exchange-act-rule-14a-8-process-current-proxy-season.

24. On February 12, 2026, BJ's invoked the Division's new policy and submitted its intent to exclude the Fund's shareholder proposal from the Company's 2026 proxy materials based on the "ordinary business exclusion" of Rule 14a-8(i)(7).

25. BJ's also requested that the Division confirm that it would not object to the Company's exclusion of the Fund's proposal. As of the date of this Complaint, the Division has not provided the requested confirmation.

26. The earliest BJ's can finalize its proxy materials for the Company's 2026 annual meeting is May 3, 2026—80 days after its February 12, 2026 letter to the Division. 17 C.F.R. § 240.14a-8(j)(1).

### D. BJ's May Not Exclude The Fund's Proposal Under The "Ordinary Business" Exclusion

27. Under the SEC proxy rules, the Fund's proposal is not excludable under the ordinary business exception or any other exception. BJ's bears the burden under the proxy rules to prove that it has a valid basis to exclude shareholder proposals submitted by a shareholder who satisfies the eligibility criteria set forth in the proxy rules. BJ's has failed to meet its burden, and its decision to exclude the Fund's proposal from the Company's 2026 proxy materials is unlawful.

28. The SEC has indicated two central considerations under the "ordinary business" exception: (1) the proposal's subject matter; and (2) the degree to which a proposal "micromanages" the company.[3]

29. With regard to the subject matter of a proposal, the SEC has stated that proposals that may relate to the company's day-to-day operations but focus on a significant policy issue are generally not excludable under Rule 14a-8(i)(7). Instead, proposals focused on significant policy

---

[3] Release No. 34-40018 (May 21, 1998).

issues "would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote."[4]

30.     The Fund's proposal focuses on the significant policy issue of global deforestation as it concerns the planet's climate.  This policy issue transcends BJ's day-to-day business and is a proper matter for shareholder consideration.

31.     Concerning micromanagement, the SEC has explained that shareholder proposals may be excluded under Rule 14a-8(i)(7) where they "involve[] intricate detail, or seek[] to impose specific time-frames or methods for implementing complex policies."[5]

32.     The Fund's proposal does not micromanage the Company as it merely requests a report providing the Company's assessment of the risks of deforestation associated with BJ's private-label brands.  BJ's board and management have full discretion in conducting any risk assessment in response to the Fund's proposal, and determining what response(s), if any, may be appropriate to address any risks identified.

33.     BJ's decision to exclude the Fund's proposal from the Company's 2026 proxy materials has caused injury to the Fund.  If the proposal is omitted from the proxy materials BJ's distributes in preparation for its 2026 annual meeting, the Fund's injury will be irreparable.  The Fund intends to submit the proposal again for inclusion in the Company's proxy materials for next year.  Provided that the proposal obtains the required shareholder support set forth in rule 14a-8(i)(12), the Fund intends to repeat this process until the proposal is adopted or an agreement can be reached with BJ's.

---

[4] *Id*.

[5] *Id*.

## CAUSE OF ACTION

## VIOLATION OF SECTION 14A OF THE SECURITIES EXCHANGE ACT AND RULE 14A-8 PROMULGATED THEREUNDER AGAINST BJ'S

34. The Fund repeats and realleges each and every allegation above as if fully set forth herein.

35. The SEC has promulgated rules governing the solicitation of proxies with respect to any security registered in accordance with Section 12 of the Securities Act, 15 U.S.C. § 78l.

36. BJ's equity securities are registered under Section 12 of the Securities Act, 15 U.S.C. § 78l.

37. The SEC has promulgated Rule 14a-8, which outlines the procedures for the submission of a shareholder proposal for inclusion in a company's proxy statement.

38. The Fund complied with the eligibility and procedural requirements for including its shareholder proposal in BJ's 2026 proxy statement, as set forth in Rule 14a-8. Specifically, the Fund has owned for at least one year on the date it submitted the shareholder proposal, and intends to own through BJ's 2026 annual meeting, shares of BJ's common stock whose market value exceeds $25,000. The Fund submitted its shareholder proposal, including this information, to BJ's in a timely fashion and otherwise complied with all applicable requirements.

39. BJ's must include the Fund's proposal in its 2026 proxy materials unless the Company can affirmatively establish that one of the specific exemptions listed in Rule 14a-8 applies.

40. BJ's only cited exemption—the "ordinary business" exemption in Rule 14a-8(i)(7)—does not apply to the Fund's proposal, as the proposal does not seek to micromanage the company, does not concern the company's day-to-day operations, and in any event, implicates significant policy considerations that transcend BJ's ordinary business.

41. BJ's intends to exclude the Fund's proposal from its 2026 proxy materials for the annual shareholder meeting.

42. BJ's exclusion of the Fund's proposal from its 2026 proxy materials for the annual shareholder meeting violates Rule 14a-8.

43. BJ's wrongful exclusion of the Fund's shareholder proposal from its 2026 proxy materials deprives the Fund of any meaningful opportunity to inform other shareholders about the content of, and reasons for, the Fund's proposal. Exclusion of the Fund's proposal from the 2026 proxy materials also deprives BJ's shareholders of an opportunity to vote on the Fund's proposal.

44. The Fund has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, the Fund requests that this Court enter a judgment providing the following relief:

A. Declaratory judgment that BJ's decision to omit the Fund's proposal from its 2026 proxy materials violates Section 14(a) of the Securities Exchange Act and Rule 14a-8, 17 C.F.R. §240.14a-8;

B. Injunctive relief prohibiting BJ's from soliciting shareholder proxies for BJ's 2026 annual meeting of shareholders without informing shareholders of the Fund's proposal, and compelling BJ's to include the Fund's proposal in its 2026 proxy materials;

C. An order awarding the Fund its costs of litigation, including reasonable attorneys' fees, pursuant to the common benefit rule; and

D. Any other relief as the Court deems just and proper.

Dated: March 2, 2026                    Respectfully Submitted,

                                        */s/ Nathaniel L. Orenstein*
                                        Nathaniel L. Orenstein (BBO #664513)

11

        Leslie R. Stern (BBO #631201)
        Christina L. G. Fitzgerald (BBO #709220)

        BERMAN TABACCO
        One Liberty Square
        Boston, MA 02109
        Tel:  617-542-8300
        norenstein@bermantabacco.com
        lstern@bermantabacco.com
        cfitzgerald@bermantabacco.com

        *Attorneys for Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement System and as Trustee of the New York State Common Retirement Fund*

*Of Counsel:*

Michael J. Barry
Edward M. Lilly
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE  19801
Tel: 302-622-7000
Fax: 302-622-7100

12